May it please the Court, my name is Stacey Tolchin and I represent Petitioner Meza-Diveni with my co-counsel Megan Brewer. I would like to reserve four minutes of my time for rebuttal. Many of the issues addressed in Petitioner's opening brief have been narrowed now. The Court's decision in Bonilla, which had not been issued when briefing had started, now establishes that legal issues underlying denials of motions to sua sponte reopen are subject to review. The Third Circuit's decisions in Sango Park and Crewe set forth a roadmap that this Court should follow in reviewing unpublished board decisions to determine whether there are departure from a settled course of adjudication. Those cases rely on the Supreme Court's decision in INS v. Yang, which establishes that when there is a settled course of adjudication of unpublished decisions, any arbitrary departure is a legal violation and a violation of the ADA. Does Yang say that, or does Yang say it might be? It does say might, Your Honor. That's right. And what Yang really wants, I think, is an explanation. If you're going to depart from a settled course of adjudication, explain why. And then it may be arbitrary and it may not. And was Yang talking about a totally discretionary decision? Yang was talking about, yeah, it was waivers for people that had committed fraud. So it was discretionary. It wasn't sua sponte, right? And it was actually issued before some of the jurisdiction-stripping provisions were issued by IRA-IRA. But Yang hasn't... It's not totally clear that that reasoning makes sense in something that's discretionary, right? Even if you have a settled course of conduct, if it's a totally discretionary decision, why can't you just change your way of looking at it without explaining it's discretionary anyway? Yeah, I think that Yang says you can, but you have to explain your reasons for it. But you just explained that Yang is from before we had this jurisdiction-stripping. So when we're not really supposed to ask why something is done that's discretionary, how do we get back to this rule? Well, but importantly, in this context, the IRA-IRA provisions on discretionary are inapplicable, right? We're looking at the Heckler v. Cheney exception, which was an APA issue, and that was what Yang was looking at. So in this context, it's looking at the same jurisdictional provision... But we have to figure out if that makes sense to apply. Our court has never said that in a sua sponte reopening situation, departing from a line of other cases, what appears to be the reasoning in the line of other cases, is impermissible. It has not. It has very limited application of Yang. It does have a case called Virk, which does cite it. And to be honest, it's really the Third Circuit that spearheaded this issue. The Eighth Circuit also has a decision called Lyadov, which looks at unpublished decisions. And in that case, it found that there was no settled practice or a course of adjudication, but that if there was, a departure may be an APA violation. I can – let me take you back to Yang for a second. Where does Yang say that you can infer from a collection of unpublished decisions a settled policy? Because Yang's point is that the government acknowledged that it was a settled policy, although the government appeared to change its position before it got to the Supreme Court. And there's a reference to maybe it was hammered into its concession by the Ninth Circuit. But our work there is done. So I'm not sure that Yang stands for the proposition you've offered it for. Well, Yang says at page 32, though the agency's discretion is unfettered at the outset, if it announces and follows by rule or by settled course of adjudication a general policy by which its exercise discretion will be governed, an irrational departure from that policy could be arbitrary. I never heard the word unpublished there any place, nor do I see anything that supports the proposition you've offered it for, which is that you can infer from a collection of unpublished decisions that don't go into details the existence of a settled policy. Right. So if you look at the other cases interpreting Yang's rule. So Yang is what you've offered up for that. Yang doesn't do that. What does? What tells us we can look at a collection of unpublished opinions? Yang does establish that, Your Honor, to settled course of adjudication, right? Because obviously precedent would be binding. If the Board issued a decision saying, here's when we'll sui sponte reopen, you have to file within 90 days, it has to be a vacature of the merits, and you have to show you would win on discretionary relief, that's probably fine. So this is the best you can do. I mean, I understand your argument that you can draw that inference from Yang. I don't think Yang requires it. And is there anything else you have to offer that may – I've got to say, I've got a problem with the whole notion of rummaging through a collection of unpublished decisions, because we crank those things out like crazy ourselves, and I don't want to encourage anybody to go rummaging through our memorandum dispositions and try to find what it deems a, quote, settled policy that I am bound as a judge of this Court to follow. I just – I have trouble with that notion. And if Yang doesn't, to me, support that proposition, what supports taking that route in the first place? I do think that the – so the Lyotoff case is an Eighth Circuit case. It does look at unpublished decisions. And I believe in Virk, which is this Circuit's decision, it also does, I think so. But Yang does set forth this – I mean, what else could a settled course of adjudication mean? So let's say – let's say I don't have these numbers of 10 or 20, but I have five or seven. Roberts. Well, it could be, as in Yang, something the government acknowledges, because Yang recites, the government acknowledges this has been its pattern. Okay, fine. But in this case, the government's not acknowledging they have a settled pattern along the lines you've argued. So, okay, what tells us we can make that decision for ourselves by delving into unpublished decisions? Well, I think the answer, though, is that there is a high number. Now, I – the first thing to know is the board doesn't put out all of its unpublished decisions, so we're really dealing with a small percentage of what the board puts on Westlaw, right? That might mean that there are lots of them that go the other way. It might be, but I think it's something for the board to articulate. I mean, let's say, hypothetically, there's 500 decisions reopening in exactly this situation where the vacature of conviction was valid. And then there's one decision that says, well, yeah, we know it's valid, but we So forget it. Like, if it's totally arbitrary, right? That has to be something that would violate the APA, even beyond Heckler v. Cheney. Well, I take you back. There has to be. I don't understand. There has to be. What's the case that says there has to be? Well, this is applying the APA and the Judilon case from the Supreme Court, which does apply the arbitrary and capricious standard to BIA adjudication. But it's a totally discretionary decision. So, I mean, why can't it be arbitrary? Because if there's a settled course of adjudication, I don't think it can depart. I mean, if it's got this practice that it does, I mean, the board does all kinds of things where it doesn't have precedent, right, all the time. It's got this ongoing practice, and then it departs because of brown hair, hypothetically. I mean, that has to be something that's an APA violation. It has to be. Because it's a Heckler v. Cheney issue, right? It's not about the statute. It's about whether or not this issue is committed to agency discretion. And the APA still confines agency discretions, even when they're discretionary, to be non-arbitrary. There's a lot of leeway, no question, on the sua sponte issue. But there has to be some limitations for something that's completely arbitrary. Go ahead. Well, when I take you back to a ecumenian, or some facsimile thereof, where we recite, the order provides virtually no explanation at all as to why the BIA declined its exercise, its sua sponte power to reopen in this case. The only fact we've been certain, the BIA considered as the date on which the ecumenians filed their motion to reopen. And yet, even though the BIA gave no reason, our court concluded we didn't have jurisdiction to revisit that issue. Here they gave something of a reason. The reason they gave is not on the surface irrational or arbitrary or capricious. So where do we have discretion to delve any further? Your Honor, again, they did give a reason. So ironically, we know after Bonilla that if a reason is given, the court can look to the reason to see if there was legal error. There's two reasons given. The board's decisions are slightly strange here after the motion to reconsider. But I think discerning from the board's decisions, they're saying that he waited too long to file the motion to reopen after the conviction was vacated. And there is a pattern or practice. We have examples, again, of cases that were two years, four years, five years, from getting the conviction vacated to filing the motion to reopen. And again, notably, we don't have an objection to such a rule because the board and its sua sponte authority can make these rules, or it can say, here's our standard. But if they're going to hold him to a standard that he doesn't know about, that's where the problem is. How do you reconcile what you're saying with the statement that the BIA gave in explaining its reasoning in the reconsideration order, where it says sua sponte reopening was denied not for timeliness, but for a lack of an exceptional situation? So I had difficulty on that. I think the answer is they found there was no exceptional situation because of the lack of due diligence. Because again, on this issue, there was no issue of, well, there's two issues. One is that there's no dispute on the conviction being vacated for the merits. But the other is they said that he wasn't eligible for relief. And I concede that if a person gets a conviction vacated, but it's still- But they said they weren't relying on that basis. But it says, I mean, that's the only thing I can discern from it. Because if there's no- Why shouldn't we assume that they think that even though the conviction was vacated, he still did something that is troubling to the agency and they want to not give him relief in their discretion? I mean, there are lots of ways you could explain what they might have been thinking. Well, they say he's not eligible for relief, right? I mean, that's what they say in the first decision in the footnote. Right, but they say they don't need to rely on that. They're not relying on that. Right, I think they're actually punting to this court to do the retroactivity analysis, is how I read that footnote. I read that footnote as saying, we don't have to talk about this because in our discretion, we don't think this is someone we want to give relief to. And it doesn't matter whether he's eligible or not, he's not getting relief because in our discretion, we have that authority and we're not giving it. So that would be a conflict from the subtle course of the, I think there's like 15 examples in this case, of cases being reopened where the person for the first time is eligible for discretionary relief, and then sending it down to the judge to make that determination in the first instance. So again, all of these things establish, if you're just consistent, they can do whatever they want, but it's the lack of consistency. And Your Honor, I do understand your concerns about going through the unpublished decisions, because obviously that's dangerous in any capacity. I think what we're looking towards, again, is a settled course of adjudication. And, you know, in- You have any, any case you can point, I mean, the one thing the board said in its September 2015 decision, the paragraph toward the bottom of the first page that concludes that, that your client did not establish an exceptional situation sufficient to warrant sua sponte reopening. It talked about, they consider it significant, respondent had a full and fair hearing in 2006, and did not diligently pursue relief thereafter. And there was this pretty substantial time gap. He was ordered removed in 2006, he came back illegally sometime after that, and was in this country for several years before the California conviction was vacated. And then it was after that, with some explanation as to why it may have taken so long, it was, it was more than a year after that the motion for reopen was filed. And the board looks at that and says, that's not diligent. Why doesn't that end it right there? So- Because none of those other decisions talk about a lack of diligence of this period of time. If, if it's a matter that's been assigned to the agency's discretion, why can't the board consider diligence as a factor in, in exercising discretion? I absolutely think they can, your honor. But what we have in these examples is cases where three or four years elapsed before somebody filed for a motion to reopen. Well, here it's nine. Between the initial renewal and the, the motion to reopen. That's a long time, and he's been back in the country almost all of that time. Why can't the board say, that's too long, period, end of story. But it, I think it can say that, but it has to explain its departure. Why? No, no, no, no. It doesn't. Because our decision says, even if you give no reason at all, that doesn't give us jurisdiction. But not when we have, so we have again, examples of, I think a case in there, 13 to 14 years in between the conviction and the motion to reopen. So, in all these other cases that we've shown, it's, it's an exceptional situation by definition to get the conviction vacated. It could very well say, and you need to have done it within 90 days, and all of those things, but it can't in the past of this course, make these decisions, and then depart without any explanation. I'd like to reserve my time. Why don't you reserve the rest of your time? Thank you. And do we still have counsel for the government on the telephone? Yes, good morning, your honors. Good morning. Hi, I'm, I'm Julia Jones, representing the Attorney General. Again, thank you for allowing me to appear telephonically due to the snowstorm. No problem. The only dispute that is before this court is whether or not this court has its jurisdiction to review the board's decision to not exercise its sua sponte authority. In Bonilla, this court said that its authority to review refusals to reopen sua sponte is limited to the degree that the refusal was based on a legal or constitutional error. And petitioner has not established any error as such. So the court should reject petitioner's contention that the board applied an incorrect standard. You have in matter of JJ, where the board specifically stated that, we have the right to sue a sponsor reopen, and for that power is reserved for exceptional situations. And it's not meant to be used for a general cure for filing defects, or to otherwise circumvent the regulations when enforcing it might result in a hardship. In this court, the, the board was, the board was very clear in this case. When it said the following, when it didn't, when it declined to exercise sua sponte authority, it says, we consider it significant that the respondent had a full and fair hearing in 2006, and that he did not diligently pursue relief in immigration court, there is no acceptance situation here at all. Petitioner- Well, let me, let me stop you there for a second. And, and I know this is hypothetical, but suppose the board said in a precedential decision that the setting aside of the underlying conviction is an exceptional circumstance, or is a factor to be weighed in an exceptional circumstance. And in this case, the board operates on no such premise. Would that constitute legal error sufficient for us to have jurisdiction over the claim? If the board introduced a published decision, announcing that that was the, the, how it interpret its, its regulation. Correct. Under that hypothetical, if you had the scenario in this case, it would have to be that the board would say, in, in line with its matter of JJ and matter of JD, of GD, excuse me, it would have to say that that's one of the factors to consider, but it, it, but in, particularly in matter of, of GD, the board was very specific to say that it's, the alien has to provide, that his situation is truly exceptional. So, I don't believe that- I, I can't figure out if you're fighting the hypo. So, when you say it has to be one factor, are you saying that, that the hypo couldn't be that the board announced a rule that setting aside a conviction was an exceptional circumstance? I don't, if, if the hy, how, how I understand the hypothetical was one, the board says it is, period, or two, it's a factor. I'm saying, based upon board precedent, if this hypothetical did exist, the board would not say it is, period. It, it might conclude, based upon its previous decisions, that it could be a factor, and therefore, it would be, and then if this, in this case, if the board declined to consider that, and it specifically said, we decline, or we can't dis, dis, consider that, that would be a legal error. But the problem is, you don't, the hypothetical just doesn't exist in this realm, obviously, and it's really hard to apply the hypothetical, particularly when you have this court in Bonilla, recognizing that the board is not required by its own regulation, or by its own decisions to reopen proceedings, even if you do have an exceptional situation. So, the hypothetical conflicts with this court's precedent. Also, I, to, to sort of hone in on a particular argument that petitioner was making with regards to this, I guess the, the word is settled course exception that the third circuit has gone through. That, in and of itself, conflicts with this court as well. I mean, this court in Bonilla, you know, relying on its previous decision in, in Eichmann, specifically stated that the court's jurisdiction is very limited. And if you really look at the Park decision, even if you follow their analysis, the, the end decision results in the exact same thing. They found that it lacked jurisdiction in that case as well. Because petitioner couldn't establish a pattern because his situation was so dissimilar to everything else. He could not provide a, a uniform line of cases. On remand, you mean? No, no, at the end of Park, if you look at, on page, in the conclusion of Park on page 656, we hold that the settle course exception to our rule, and then it keeps going the unpublished BIA cases cited by Park do not lead to the reasonable inference that the BIA has done so here. For these and other reasons, we lack jurisdiction over Park's petition for a review. It will be dismissed. So petitioner, in this case, one is mistakenly argued that due diligence was required. That's not the case. But the case is, petitioner's circumstances are so factually distinctible here. Petitioner admits that he was removed and re-entered. If you look at the record on page 166, he admits that he returned illegally in 2008. He admits on page 172 of the record that he was arrested almost five years later, in 2013, for driving under the influence and for driving under suspended license. He admits in 2014, yes, the vac, the previous conviction was vacated, but he admits he pled guilty to felony possession of methamphetamine, felony statutory rape, and a misdemeanor charge. So he admits that he pled guilty to two felonies and a misdemeanor. And so the board, looking at all of the factors presented, stated the following, it said, based upon this, we conclude that respondent's motion did not establish an exceptional situation sufficient to warrant to respond to re-opening. Well, it's certainly the case that there's a pretty ugly record or the board could have said that it didn't. It didn't talk about the illegal re-entry. It didn't talk about the subsequent pleading of guilty to other charges. It talked about the lack of diligence. And so I guess I pose the question to you under general APA standards. Do we have enough that permits us to evaluate what the board did? Absolutely, your honor. I mean, the fact of the matter, the board did not, as petitioner wants to point out, that the board did not say you did not file within those 90 days. The board says you did not diligently pursue relief in immigration court. And you have to, looking at the record on appeal, these are the facts that were before the board. And that, in and of itself, following, I commend following Bonilla, that in and of itself is sufficient. And that in and of itself does not invoke this court's jurisdiction to review, because that is neither a legal or a constitutional error. If, it's, I hate to say, but- What is your response to the brown hair hypothetical? Could the board say we're not giving to respond to a re-opening because you have brown hair? Another hypothetical? I would, under that hypothetical, the board, under the Bonilla analysis, if that's the reason the board would give, under the Bonilla analysis, the board is limited to, if the refusal was based on a legal or constitutional error, it would be the burden of petition to prove that that refusal based upon a legal or constitutional error, I would, I'm not a constitutional scholar, unfortunately, I can't posit that, whether or not that that would be sufficient, but that would be, that would be the crux of the petitioner's argument that he would have to make, he would have to make in order to invoke this court's jurisdiction. But the jurisdictional bar is high in this case because of the way the regulation is written that the board may re-open proceedings on its own motion. This court has recognized the hurdle as high as such. And therefore, it has recognized that its authority, although the board has the discretion, it's not unlimited. But it's, but your review is only limited to the degree the refusal was based on a legal or constitutional error. And so, that's my best answer for your hypothetical, unfortunately, but. If the court doesn't have any other questions. I think we may not. So thank you very much for joining us by phone. Thank you, I really appreciate it. Thank you, Your Honor. Good luck there with the snow. Thank you. And I think you have about two minutes left. Thank you, Your Honor. Just a couple of things. The settled course of adjudication analysis does not apply, obviously, to the federal courts. This is a doctrine that was developed by the federal courts to make sure that the agencies were properly doing their job. So that even when a decision is discretionary, there still are some constraints to make sure that they're not making completely arbitrary decisions. I also did find the case I was referring to, that said by definition that a decision is, a settled course, I'm sorry, that a decision is an exceptional situation if the conviction is vacated. And that's in the January 7th, 28J, it's Ramos del Valle. And that's from September of this year. And then finally, I just wanted to note that in the briefing, we did note three cases that were unpublished where the motion to reopen was filed, in one case, four years after the conviction was vacated. Again, just showing that there's a departure from a settled course of adjudication. And all we're saying is, if there's going to be- You say Ramos, aka Vasquez, is that the one? Alberto Ramos del Valle from September of this year. And it does actually say, we also conclude that the substantive modification of the respondent's 1994 conviction is an exceptional situation that justifies sui sponte reopening, so. But, could you read it again, because I'm having trouble finding the case you're talking about. We also conclude that the substantive modification of the respondent's 1994 conviction- Right, so they're saying that respondent's situation is exceptional, right? Is there anything there in that sentence that says every respondent in this situation will be exceptional? No, I think it's saying, though, that the vacature is an exceptional situation. I read it as a limited exception. I read it as a limited exception. Limited to that case? I think we were very clear in that case, as a limited exception, you shouldn't, it isn't going to be a platform upon which you can do anything more, if this is not a similar limited exception in our case, is it? Your Honor, just- If you take the facts of that case and this case, it's not a similar limited exception. Right, I mean, I think the big difference in this case, Your Honor, is that they found he was ineligible for relief. And that would be a basis for finding somebody is not an exceptional situation. What's the point of reopening if the person's going to be deported? And that's, I have no problem with that, but we obviously raised the relief issue to this court under the Montgomery Ward test, which we don't have time for, clearly. But I think that makes sense to me. You're not eligible for relief, why would we reopen? But in all of these other cases we've shown, conviction vacated on the merits, you haven't had the opportunity yet to apply for relief, they send it back down. And that's the departure. Again, on the relief issue, we do believe that the Montgomery Ward standard would apply, and that we've shown that the retroactivity test, when applied, means that he would still- This is no longer a rebuttal, and you're over your time. So thank you very much, counsel. Thank you. The case is submitted.
judges: Wallace, Clifton, Friedland